Tomas G. ERVIN, Plaintiff,

v.

David BLACKWELL, Donald R. Jenkins, Defendants.

No. 80–4208–CV–C–5.

United States District Court, W.D. Missouri, C.D.

July 6, 1983.

Harvey M. Tettlebaum, Jefferson City, Mo., Kenneth Romines, St. Louis, Mo., for plaintiff.

Jerry Short, Asst. Atty. Gen., Jefferson City, Mo., for defendants.

### ORDER

This is an action brought under 42 U.S.C. § 1983. Defendants have moved for summary judgment and, for the reasons which follow, their motions will be granted.

### A. *Statement of Facts*

Plaintiff was an inmate subject to the custody and control of the Missouri Division of Corrections from February 14, 1969 until August 16, 1979. From December 21, 1976 until August 16, 1979, plaintiff participated in the Institutional Community Work Release Program operated by the Missouri Division of Corrections. While on work release, plaintiff was incarcerated at the Church Prison Farm facility located in Cole County and was employed by the Missouri Department of Revenue. While he was on work release a percentage of plaintiff's salary was deducted from his prison account and paid into the state treasury in accordance with Division of Corrections regulations.[1] Subsequent to his release, plaintiff brought this action against David Blackwell and Donald Jenkins. Defendants Blackwell and Jenkins each served as Director of the Missouri Division of Corrections during a portion of the time period during which plaintiff was on work release. Plaintiff seeks to recover the nearly eight thousand dollars taken from his prison account and paid into the state treasury during the period of time when he was participating in the work release program. Plaintiff alleges that there was no statutory authorization allowing the defendants to transfer a portion of plaintiff's work release earnings to the state treasury. Plaintiff further alleges that the defendants' actions constituted a deprivation of plaintiff's property under color of law and without due process and just compensation.

### B. *Statement of the Issue*

The issue in this case is whether the plaintiff had a property or liberty interest in the work release program such that the conditions placed upon his participation in the program violated his constitutional rights.

### C. *Opinion and discussion.*

 Plaintiff has brought this action pursuant to 42 U.S.C. § 1983, which provides a remedy for the violation of constitutionally protected rights. Jurisdiction is granted the Court by 28 U.S.C. § 1343. Section 1983 does not provide a remedy for every wrong committed under color of law. The plaintiff must show deprivation of a right secured by the Constitution or laws of the United States before the injury is actionable. The plaintiff must establish an entitlement, right, or liberty interest that is protected by state or federal law. *Meac-*

---

1. The regulations first provided that up to $150.00 would be required for maintenance, the amount to be determined on a sliding scale. Later the regulations establishing a work release program were revised. The section concerning a maintenance payment provided that if gross monthly earnings exceeded $150.00, 25% of gross earnings, not to exceed $300.00 per month, would be paid to the State. 13 C.S.R. § 20–103.011(3) (1978).

*hum v. Fano,* 427 U.S. 215, 223–24, 96 S.Ct. 2532, 2537–38, 49 L.Ed.2d 451 (1976); *Peck v. Hoff,* 660 F.2d 371, 373 (8th Cir. 1981). A prisoner has no constitutional or federally created right to participate in a work release program. *See Peck, supra,* at 373 (no federally created constitutional right to participate in rehabilitative programs). Therefore, the Court must examine state law to determine if the plaintiff had a legal entitlement or right to participate in the work release program. *Id.*[2]

The Supreme Court in *Lynch v. Household Finance Corp.,* 405 U.S. 538, 552, 92 S.Ct. 1113, 1122, 31 L.Ed.2d 424 (1972) held that § 1983 prohibits the deprivation of property rights without due process. Property includes entitlements, benefits or expectations created by state law. "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.... To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of

it. He must instead have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Plaintiff has neither pled nor shown any right, entitlement, or expectancy of entitlement to participate in a work release program. The complaint must be dismissed unless a violation of a constitutional right is found. *Peck v. Hoff,* 660 F.2d 371 (8th Cir.1981). It is apparent that neither statutes nor regulations established an expectancy of entitlement to participate in the work release program without the accompanying payment of "maintenance." Far from establishing an automatic or objective procedure, the state statutes in effect during the relevant time period included only a passing reference to the work release program.[3] During the period of time that the plaintiff participated in the work release program, there was no specific statutory authority for the program.[4] The division regulations which established the program are the same regulations which limit participation in the program to those inmates

**2.** The plaintiff does not appear to have conducted a reasoned analysis of the instant situation. The initial inquiry in any § 1983 action is a determination of the underlying fundamental or constitutional right involved. The plaintiff asserts that the underlying constitutional right involved in this action is a property right in his salary. He further asserts that his property was taken from him without due process of law when the defendants deducted a portion of his salary for maintenance. The underlying right involved, however, is not in a salary obtained if the plaintiff is granted work release, but in the work release program itself. The issue is whether plaintiff has a liberty interest in the work release program and, if so, whether the defendants' actions deprived him of that interest or infringed upon it. Naturally, plaintiff has a property right in his salary, but in this case he exchanged a portion of his salary for the opportunity of participating in the work release program. The issue is whether the defendants can require such payment as a condition to work release.

**3.** "1. The director of the division of corrections may extend the limits of the place of confinement of an inmate who, he has reasonable cause to believe, will honor his trust, by authorizing him, under prescribed conditions, to visit

specifically designated places within the state for a period not to exceed thirty days per year and to return to the same or another designated institution. The authority herein conferred may be exercised to permit the inmate to visit a relative who is ill, to attend the funeral of a relative, to obtain medical services not otherwise available, to contact prospective employers and to participate in approved rehabilitative programs. If the inmate is enrolled in a work release program, the thirty-day-per-annum limitation shall not apply." R.S.Mo. § 216.224 (1978).

**4.** Neither the plaintiff nor the defendant has cited a Missouri statute authorizing the work release program. The Court's independent examination of Missouri statutes in effect prior to and during plaintiff's participation in the work release program has revealed no specific statutory authorization. The defendant asserts that R.S.Mo. § 216.115(3) (1978) grants authority to institute a work release program. Section 216.-115(3) states:

"The director shall make such rules and regulations, not in conflict with the laws of this state, as he may deem proper for the government and management of the institutions under the jurisdiction of the division."

who agree to pay maintenance from their salary. Thus, plaintiff could not under any conceivable set of facts establish a constitutional right to participate in the program without payment of the maintenance.

Plaintiff concludes that he is entitled to relief because "(1) defendants have taken money from plaintiff for 'maintenance,' unrelated to any actual cost; (2) defendants do not take money for quote 'maintenance' from those inmates involved in prison industries; (3) defendants knew, or should have known, that they could not exact a payment for 'maintenance' without specific legislative authority; (4) defendants intentionally and wilfully told the plaintiff that he would pay a penalty called 'maintenance,' or he could take his job and shove it!" Plaintiff's response to defendants' supplemental suggestions at p. 3.

Plaintiff confuses the issues. Plaintiff asserts that his constitutional rights were violated because the defendants had no statutory authority to promulgate regulations mandating a maintenance payment. Plaintiff, however, has failed to establish that he had a constitutional right to participate in the work release program. Plaintiff's constitutional rights were not violated when his participation in the program was conditioned upon a maintenance payment because he had no constitutional right entitling him to participate in the program. The very regulations establishing the program conditioned participation upon a payment of "maintenance."

 It is the Court's determination that the powers given the Director of the Division of Corrections were sufficiently broad to include both the establishment of the work release program and the maintenance restriction placed upon it. The maintenance restriction fell within the rehabilitative jurisdiction of the director. The payment not only generated additional funds, but, more importantly, it gave inmates a sense of responsibility by requiring them to pay for a portion of their room and board. The most that can be asserted is that the defendants lacked the specific statutory authority to establish a work release program. Limitations on the benefits received from a program which may not have been statutorily authorized, however, cannot infringe on constitutional rights since there is no underlying statutory right to participate in the program. Mere violations of state law are insufficient to support a cause of action under § 1983. *Sigler v. Lowrie*, 404 F.2d 659, 662 (8th Cir.1968). The issue is not whether state law has been violated, but whether the plaintiff has been deprived of a federal right. *Id.*

The plaintiff's ability to earn a salary by participating in the work release program was conditioned upon his paying a percentage of his salary to the State. Plaintiff's property was not taken from him without due process because plaintiff had no property right or liberty interest in the work release program. (See n. 2 for a discussion of plaintiff's claimed property interest in his salary.) The requirement that all participants in the work release program pay a percentage of their salary to the state was not a constitutional violation.

 In the alternative, the entry of summary judgment for the defendants is mandated by *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (objective qualified immunity doctrine established). Both defendants in this case are officials within the Missouri Division of Corrections. Defendant Blackwell became the Director of the Missouri Division of Corrections on August 8, 1979, approximately nine days prior to plaintiff's parole. Defendant Jenkins was Director of the Missouri Division of Corrections from February 1, 1978 until August 8, 1979. "[G]overnmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. (citations omitted)." *Id.* at 816, 102 S.Ct. at 2738. Measured by reference to clearly established law, the defendants' conduct in this case was objectively reasonable. The defendant's discretionary acts

violated none of the plaintiff's clearly established constitutional rights.

 Plaintiff further asserts a claim against the defendants for violation of his freedom of speech. Plaintiff alleges that he "suffered discipline and diminution of the privileges he then experienced in violation of his freedom of speech guaranteed by the First Amendment to the United States Constitution" after he sent a letter to defendant Jenkins regarding the work release program. "Broad and conclusory statements unsupported by factual allegations are not sufficient to support a cause of action under § 1983." *Ellingburg v. King*, 490 F.2d 1270, 1271 (8th Cir.1974). The pleadings must not be conclusory and must be set forth so that a claim is stated. The plaintiff's answers to interrogatories states that his claim is based upon the actions of "defendants' employees." It is clear that "[w]here monetary damages as distinguished from equitable relief is sought under the provisions of the Civil Rights Act, the doctrine of respondeat superior does not apply; personal involvement of the defendant is required." *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir.1971). A cause of action has not been stated even if the "defendants' employees" did violate the plaintiff's constitutional rights. Prison administrators cannot be held liable on a vicarious liability theory for the acts of their subordinates absent factual allegations of personal participation, direction, or acquiescence in those acts or omissions. *See Pearl v. Dobbs*, 649 F.2d 608 (8th Cir.1981). "Supervisory personnel whose personal involvement is not alleged may not be held responsible for the acts of their subordinates" in Civil Rights actions. *Milton v. Nelson*, 527 F.2d 1158, 1159 (9th Cir.1976). In the present case, plaintiff has alleged no personal involvement by either of the defendants in connection with his alleged constitutional deprivations. Accordingly, it is hereby

ORDERED that plaintiff's claim for alleged violation of his First Amendment rights is dismissed. It is further

ORDERED that defendants' motion for summary judgment is granted. It is further

ORDERED that each party shall bear their own costs.